IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LINDA BURDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-006-RAW-KEW |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Linda Burden (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 11, 1957 and was 56 years old at the time of the ALJ's decision. Claimant completed his high school education and one year of college. Claimant has worked in the past as public school tutor. Claimant alleged an inability to work beginning May 18, 2012 due to limitations resulting from problems with her neck, hands, back, legs, depression, and anxiety.

**Procedural History**

On April 2, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 21, 2013, an administrative hearing was conducted by Administrative Law Judge ("ALJ") Lantz McClain in Tulsa, Oklahoma. The ALJ entered an unfavorable decision on August 30, 2013. The Appeals Council denied review on November 21, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work. He also concluded Claimant could perform a range of light work with limitations at step five.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly consider the opinion of Claimant's treating physician; and (2) failing to properly evaluate Claimant's credibility.

**Evaluation of the Opinion of Claimant's Treating Physician**

4

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post cervical surgery; degenerative disc disease of the lumbar spine; mitral valve leak; moderate carpal tunnel syndrome; and status post right trigger release; and "overweight." (Tr. 13). The ALJ concluded that Claimant retained the RFC to perform her past relevant work as a tutor. (Tr. 20). He also assessed Claimant's RFC to permit her to perform a range of light work. In so doing, the ALJ found Claimant could occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds; stand/walk for at least six hours in an eight hour workday and sit for at least six hours. Claimant could no more than occasionally stoop due to back pain and should avoid work above the shoulder level due to neck surgery. Claimant should not constantly use her hands for handling or fingering, only frequently. (Tr. 14).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform her work as a tutor which is classified by the *Dictionary of Occupational Titles* ("DOT") as light, skilled work with an SVP of 7. As a result, the ALJ found Claimant was not disabled from May 18, 2012 through the date of the decision. (Tr. 20).

Claimant contends the ALJ erred by failing to properly consider and weigh the opinions of her treating physician, Dr.

5

Michele M. Coulter. On June 20, 2013, Dr. Coulter completed a medical source statement on Claimant. She found Claimant could stand/walk for less than two hours in an eight hour day; could not lift more than two pounds (as reported by Claimant); and would not be able to understand and remember detailed instructions or maintain attention and concentration for extended periods in order to perform detailed tasks 50% or greater of the time. Dr. Coulter stated in the narrative assessment that Claimant "can walk around driveway 50 yards" and "sometimes she will just drop a piece of paper because hands are tingling." (Tr. 514).

The ALJ related the details in Dr. Coulter's treatment records and her medical source statement in his decision. (Tr. 18-19). The ALJ declined to give Dr. Coulter's opinion controlling weight, stating that she "primarily refilled prescriptions and referred claimant to a specialist." (Tr. 19). He also cited Dr. Coulter's "to whom it may concern" letter dated September 9, 2011 in which she stated Claimant was currently under her medical care and that she could return to work on September 12, 2011 with no restrictions on her work activity. (Tr. 284). Additionally, on January 11, 2012, Dr. Coulter authored a similar letter allowing Claimant to return to work without restriction on January 16, 2012. (Tr. 314). The ALJ concluded that the medical record does not

indicate a deterioration in Claimant's condition from the time of these letters to the date on Dr. Coulter's medical source statement to warrant the type of restrictions reflected in the statement. (Tr. 19).

Claimant cites to evidence demonstrating that her condition deteriorated between the time of the release letters and the date on Dr. Coulter's statement. On November 4, 2011, Dr. John S. Marouk noted Claimant was diagnosed with a ruptured disc at the L5-S1 level with associated mechanical and radicular pain. (Tr. 232). On August 22, 2012, Dr. Marouk stated Claimant had undergone an anterior cervical fusion at C4-5 in April of 2012. She continued to have some neck pain, shoulder pain, and arm pain. But her low back pain, left hip, and left leg pain had become incapacitating for her. (Tr. 480).

On May 9, 2013, Dr. Annette Stephens administered a lumbar provocative discogram on Claimant. She diagnosed Claimant with lumbar degenerative disc disease at L5-S1, increased herniated disc at L4-5, and a herniated disc at L3-4. (Tr. 458).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the

7

opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. §

404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The problem with the ALJ's analysis of Dr. Coulter's opinion is twofold. The ALJ stopped his weighing of the opinion after concluding that it was not entitled to controlling weight. He must then proceed to determine the lesser weight which is to be attributed to the opinion. Additionally, the medical evidence supports a finding of a deterioration in Claimant's condition after the ALJ found that it had not done so. On remand, the ALJ shall re-evaluate the weight he gives Dr. Coulter's opinion and shall re-examine the medical evidence to ascertain whether Claimant's condition deteriorated from the time Dr. Coulter released Claimant without restriction.

**Credibility Determination**

Claimant testified that if she sits, stands too long, or walks for more than 30 minutes her pain increases significantly to a ten.

(Tr. 39). She spends seventy percent of her day off of her feet as a result. Id. When Claimant goes shopping, she parks in handicapped parking and uses a motorized wheelchair. (Tr. 40).

The ALJ found Claimant's testimony "not entirely credible." (Tr. 16). The only further explanation of the ALJ's finding on credibility is a statement that Claimant's reported activities of daily living are inconsistent with an inability to perform work activities. Specifically, the ALJ found Claimant does not need medication reminders, is able to fix her own meals and clean, is able to drive, can shop and handle money, can follow written and spoken instructions well, and is able to handle stress and changes in routine. (Tr. 19). None of these findings support a rejection of Claimant's inability to stay on her feet.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or

10

other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). On remand, the ALJ shall reassess Claimant's credibility. In particular, the ALJ shall consider the credibility of Claimant's statements regarding her inability to stay on her feet for extended periods of time.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE